DJ/DG:AJE
F. #2018R01917

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

MICHAEL VAX,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

INFORMATION

Cr. No. 22-324 (BMC) (PK)
(T. 18, U.S.C., §§ 371, 982(a)(7),
 982(b)(1) and 3551 et seq.; T. 21, U.S.C.,
 § 853(p))

THE UNITED STATES CHARGES:

## INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

I.    Background

        1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

        2.    Medicare was divided into multiple parts. Medicare Part B covered, among other things, costs related to durable medical equipment ("DME"), including orthotic braces such as off-the-shelf ankle braces, knee braces, elbow braces, wrist braces and hand braces (collectively, "braces") and related equipment.

3. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

4. DME companies, physicians and other health care providers that provided items and services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to abide by the policies and procedures, rules and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act and applicable policies, procedures, rules and regulations issued by CMS and its authorized agents and contractors. Providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

5. Under Medicare Part B, claims submitted by DME companies for providing beneficiaries with DME were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury, ordered by a physician, properly documented and actually provided as represented. Medicare did not pay claims procured through the payment of kickbacks and bribes.

6. Medicare used the terms "ordering provider" and "referring provider" to identify the physician or nurse practitioner who ordered or referred an item or service reported in that claim. Individuals ordering or referring these items were required to have the appropriate training, qualifications and licenses to provide such services and order and refer such items.

7. A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the items and services were provided, the cost of the items and services and the name of the provider or medical professional who provided the items or services or ordered or referred the items or services. Providers conveyed this information to Medicare by submitting claims using billing codes.

8. Medicare covered services provided through telemedicine if certain requirements were met. Telemedicine services generally involved the connection of medical providers and beneficiaries through real-time, interactive audio and video telecommunications systems to facilitate the providers' provision of medical services to the beneficiaries.

II. The Defendant and Relevant Individuals and Entities

9. The defendant MICHAEL VAX, together with others, owned and operated several DME companies located in Brooklyn, New York, East Patchogue, New York and other locations, including, among others, Company-1 (collectively, the "DME Companies"), entities the identities of which are known to the United States. The DME Companies supplied DME, including braces, to beneficiaries throughout the United States.

10. The DME Companies included entities that were enrolled with Medicare and authorized to bill Medicare for DME provided to beneficiaries.

11. Individual 1 and Individual 2, individuals whose identities are known to the United States, owned and operated various entities located in New Jersey that purportedly provided marketing services, including, among others, Company-2 (collectively, the "Marketing Companies"), entities the identities of which are known to the United States. The Marketing Companies obtained and sold doctors' orders for DME, including braces and other items.

III. The Kickback Scheme

12. From approximately August 2016 to approximately April 2019, the defendant MICHAEL VAX, together with others, offered and paid kickbacks to the Marketing Companies in exchange for the referral of signed doctors' orders for DME to the DME Companies.

13. The Marketing Companies were purportedly in the business of providing marketing and other business-related services. In reality, the Marketing Companies bought and sold doctors' orders for braces and other items. Specifically, the Marketing Companies identified beneficiaries through the use of call centers and used purported telemedicine companies to obtain signed doctors' orders for braces and other items for the beneficiaries. The Marketing Companies paid kickbacks to purported telemedicine companies and others for doctors' orders that the purported telemedicine companies provided. The Marketing Companies then provided the signed doctors' orders to the DME Companies in exchange for kickbacks. The DME Companies used the signed doctors' orders to provide the braces and other items to beneficiaries and then submitted claims to Medicare for providing them.

14. In furtherance of the scheme, the defendant MICHAEL VAX paid and caused the payment of bribes and kickbacks from the DME Companies to the Marketing Companies, including by directing and authorizing wire transfers from the DME Companies' bank accounts to the Marketing Companies. In exchange for the payments authorized and directed by VAX, the Marketing Companies transmitted doctors' orders for braces and other items to the DME Companies so that the DME Companies could bill Medicare for the DME provided to beneficiaries. The DME Companies, in turn, provided the items to beneficiaries and submitted claims to Medicare based on the orders obtained from the Marketing Companies.

15. From approximately October 2016 to approximately January 2019, the DME Companies paid over $5 million in kickbacks and bribes to the Marketing Companies, in exchange for doctors' orders used to dispense braces and other items to beneficiaries and submit claims to Medicare.

16. From approximately August 2016 to approximately April 2019, through the DME Companies, the defendant MICHAEL VAX, together with others, submitted and caused the submission of claims from the DME Companies to Medicare totaling approximately $29 million for braces and other items and Medicare paid approximately $14 million on those claims.

## CONSPIRACY TO OFFER AND PAY HEALTH CARE KICKBACKS

17. The allegations contained in paragraphs one through 16 are realleged and incorporated as if fully set forth in this paragraph.

18. In or about and between August 2016 and April 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL VAX, together with others, did knowingly and willfully conspire to offer and pay kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such persons to refer Medicare beneficiaries to the DME Companies for the furnishing and arranging for the furnishing of services and items for which payment may have been made in whole and in part under Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A).

19. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant MICHAEL VAX, together with others, committed and caused the commission of, among others, the following:

## OVERT ACTS

(a) On or about August 31, 2018, MICHAEL VAX, together with others, caused a wire transfer in the amount of $10,000 from Company-1 to Company-2;

(b) On or about October 26, 2018, MICHAEL VAX, together with others, caused a wire transfer in the amount of $10,000 from Company-1 to Company-2; and

(c) On or about December 24, 2018, MICHAEL VAX, together with others, caused a wire transfer in the amount of $33,000 from Company-1 to Company-2.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

20. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

21. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

*By Carolyn Pokorny, AUSA*
_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


*Glenn Leon /by AJE*
_____
GLENN LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

F.#: 2018R01917
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

MICHAEL VAX,

Defendant.

# INFORMATION

(T. 18, U.S.C., §§ 371, 982(a)(7), 982(b)(1) and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

*Clerk*

*Bail, $* _____

*Andrew Estes Trial Attorney (718) 254-6250*